UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

Case No. 05-80543-CIV-RYSKAMP/VITUNAC

TCC AIR SERVICES, INC., a Delaware
corporation; and BASIC SYSTEMS OF
DELAWARE, INC., a Delaware
corporation,

        Plaintiffs,

v.

RICHARD M. SCHLESINGER,

        Defendant.
_____/

## ORDER PARTIALLY GRANTING  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment **[DE 61]**, filed on August 25, 2006.  Plaintiffs filed a Response **[DE 65]** on September 15, 2006, and Defendant filed a Reply **[DE 67]** on September 25, 2006.  The Court heard oral argument from the parties on November 30, 2006.  The motion is now ripe for adjudication.

**I.**      **Introduction**

This is an action for unjust enrichment, conversion, breach of an oral contract, and civil theft arising out of the alleged unauthorized use of jet aircraft.  *See* Second Am. Compl. **[DE 20]**, at ¶ 7 *et seq*.  Plaintiffs are the owners of two Beechjet 400A jet aircrafts, the first bearing United States Registration Number N2273Z and the second bearing registration number N13GB (hereafter referred to as "Aircraft N2273Z" or "Aircraft N13GB").  *Id.* at ¶¶ 7-8.  On December 21, 2004, Plaintiff, Basic Systems of Delaware, Inc. ("Basic Systems") sold its Aircraft N2273Z

to Plaintiff, TCC Air Services, Inc. ("TCC"). *Id.* at ¶ 7.  Plaintiffs allege that beginning no later than August, 2004, Defendant and TCC entered into a business relationship for the purpose of jointly purchasing a Learjet 60 from Aero Toy Store, LLC ("ATS") for use in their separate businesses. *Id.* at ¶¶ 9-12.  In furtherance of their negotiations, the parties each deposited $50,000 in escrow and organized two Delaware limited liability companies under the names of Aero Zap, LLC and Aero Zap Member, LLC. *Id.* at ¶¶ 9, 11.  The parties also entered into a memorandum of understanding, which provided for the sharing of the use and cost of the Learjet 60, once it was acquired. *Id.* at ¶ 12.

Plaintiffs further allege that during the period of November 1, 2004 through December 31, 2004, Defendant used Aircrafts N2273Z and N13GB to make 81.9 hours of both authorized and unauthorized flights, often to and from White Plains, New York and either Fort Lauderdale, Florida or West Palm Beach, Florida. *Id.* at ¶¶ 13-14.  Plaintiffs also contend that Defendant never paid TCC for the use of the aircraft, and that the costs for the subject flights total $98,359.13. *Id.* at ¶¶ 18-19, Exh. "B".  Accordingly, the Plaintiffs filed the instant lawsuit in which they demand treble damages, reasonable attorney's fees, pre-judgment interest, and costs. *Id.* at 9.

On February 16, 2006, this Court granted in part and denied in part Defendant's Motion to Dismiss the Plaintiffs' Second Amended Complaint **[DE 31]**.  The Court dismissed without prejudice Plaintiffs' Count VI (breach of oral contract).  Now, Defendant moves this Court to grant its motion for summary judgment on all remaining counts.

## II.     Discussion

### A.     Summary Judgment Standard

A party is entitled to judgment as a matter of law when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be entered only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in favor of the non-moving party. *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). The non-moving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The burden is not a heavy one; however, the non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "It is the obligation of the non-moving party, however, not the Court, to

scour the record in search of the evidence that would defeat a motion for summary judgment: Rule 56 'requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Lawrence v. Wal-Mart Stores*, *Inc.,* 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002) (quoting *Celotex*, 477 U.S. at 324).  Moreover, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment.  *See Earley*, 907 F.2d at 1081.  The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment.  *See Celotex*, 477 U.S. at 322.

B.   **Count I – Unjust Enrichment**

In Count I, Plaintiffs allege that "Defendant Schlessinger has been unjustly benefitted by his failure to pay the Plaintiffs the money fully set forth herein," and that "Plaintiffs have been damaged to the extent of unreimbursed costs and loss of profits."  Second Am. Compl. at ¶¶ 30-31.  Under Florida law, the elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See, e.g., Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

In regards to the benefit conferred, Rolando Bunster[1] stated that there are other costs associated with operating an airplane above those direct costs such as fuel, pilot and landing fees:

> essentially an airplane has direct operating costs and it has total operating costs. The direct operating costs are those costs like fuel that is, you know, a direct cost that you put the fuel in and you use it.
> And it also has, in this particular case, what's called engine reserve and maintenance reserve. In the case of these aircraft, you set aside a certain amount of money per hour, which you pay to the engine manufacturer, and that is paid to keep the aircraft on what's called a zero time engine situation.
> So these costs, these direct operating costs are, for this particular type of aircraft, in those days when fuel was a little bit cheaper, where probably in the vicinity of $1,100 per hour. And that includes sometimes, you know, maintenance reserve, engine reserve.
> And if you wanted to charter that aircraft, the going rate in the market was like $2,000 an hour, because in addition to the direct operating costs, aircraft have pilot expenses, insurance, hanger [sic], and value depreciation of the aircraft.

Bunster Depo. at p. 124-25. Thus, those costs over the direct costs would constitute a benefit since Defendant only paid the direct costs associated with his flights.

There are, however, material issues of fact in dispute regarding the number of hours Defendant used the planes, the proper amount of damages at issue and how much money Plaintiffs could be compensated because of how the airplane was licensed. Defendant argues that since Plaintiffs were flying under a Part 91 certificate, as opposed to a Part 135 certificate, federal regulations bar Plaintiffs from charging a fee for their aircraft except under certain circumstances. *See* Sharazi Depo. at p. 25-26; *see also* 14 C.F.R. § 91.501; 14 C.F.R. § 135.4, 135.64. These circumstances include charging an individual for the direct costs for the flight as well as an additional charge equal to 100 percent of the fuel, oil, and lubricant costs. 14 C.F.R. § 91.501(d).

For the forgoing reasons, there are material issues of fact in dispute and therefore

---

[1] Bunster is Plaintiffs' corporate representative and was personally involved in many of the transactions giving rise to this lawsuit.

summary judgment cannot be granted.

### C. Count II – Conversion

Plaintiffs allege in Count II that "Defendant intentionally assumed unauthorized control of Plaintiffs' Aircraft when it [sic] made the aforementioned unauthorized flights to the exclusion of Plaintiffs' rights." Second Am. Compl. at ¶ 33. Under Florida law, a conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993). Defendant contends that he was authorized to use the planes. If Defendant were authorized to use the planes the conversion claim fails. *Garrett v. American Fruit Growers*, 186 So. 269, 273 (Fla. 1936).

John Kerr[2] stated that he would always obtain authorization from either Bunster or one of Bunster's employee/agents before Schlesinger used the airplanes. Kerr Decl. at ¶ 10. Benjamin Shirazi[3] stated that he often arranged flights for Defendant when one of Plaintiffs' planes was hangared with ATS and that he would always confirm that Defendant was authorized to use the plane before he would permit Defendant to take-off. Shirazi Depo. at p. 21, 27-28, 32-34.

Bunster argues that Defendant did not have authorization for all of the flights because Plaintiff never intended that Defendant would fly over 20 hours when they originally gave him permission to use the plane. Bunster Depo. at p. 126-33. Bunster, however stated that Defendant did have authorization to use the planes, but that Defendant abused that right. *Id*. at

---

[2]Kerr was the intermediary between Bunster and Defendant and was facilitating their potential joint purchase of the Learjet 60. Schlesinger Decl. at ¶ 3; Kerr Decl. at ¶ 3; Bunster Depo. at p. 25, 29, 61, 145-46. As the intermediary, Schlesinger would often contact Kerr to get authorization from Plaintiffs to use Plaintiffs' airplanes. Sharazi Depo. at p. 19-20.

[3]Shirazi was an employee of Aero Toy Store (ATS) and often arranged Schlesinger's flights on Plaintiffs' planes hangared with ATS. Shirazi Depo. at p. 4, 33-34.

130.

Bunster's statement goes to the heart of the issue. Authorization in this case hinges on whether Defendant asserted wrongful control over Plaintiffs' aircraft. Although Defendant may have used the planes more than Plaintiff intended, that does not mean that he was unauthorized to use the aircraft. It is unfathomable that someone without any authorization could walk into a hangar and take an airplane for a joyride. In fact, Bunster's prior statement in his deposition shows that Defendant was authorized to fly the planes:

> It was a very loose, loose relationship. I was going to be his partner. We had a good relationship. We were trying to buy and aircraft together. You know, it is assumed that when you're dealing with people like that, he's a man that presented me with a substantial net worth balance sheet, that I was dealing with a gentleman.
> You know, I wasn't watching what he was doing 100 percent of the time."

*Id*. at p. 126-27. Thus, Bunster's statement shows that he initially gave Defendant authorization based on trust that Defendant would use the aircraft conservatively. When Plaintiff discovered that Defendant used the plane more than Plaintiff wanted, he sent Defendant an e-mail on December 18, 2004 revoking his prior authorization. Simply because a party uses something in a way that owner does not like does not automatically create recovery under conversion. "[T]he essence of an action for conversion is not acquisition of the property by the wrongdoer, but rather the refusal to surrender the possession of the subject personality after demand for possession by one entitled thereto." *Joseph v. Chanin*, 940 So.2d 483, 487 (Fla. 4th DCA 2006); *Ernie Passeos, Inc. V. O'Halloran*, 855 So.2d. 106, 108-09 (Fla. 2nd DCA 2003). After Bunster terminated Defendant's authorization to fly via the December 18, 2006 e-mail, Defendant only used his plane one other time, after he had obtained specific authorization from Bunster. Thus, this Court finds that there is no material issue of fact and that Plaintiff failed to prove conversion.

7

### D. Count III - Breach of Oral Contract

To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to "a certain and definite proposition" and left no essential terms open. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999). An agreement on price is an essential term. *Metro. Dade County v. Estate of Hernandez*, 591 So.2d 1124, 1124-25 (Fla. 3rd DCA 1992); *Teubner v. El-Dick*, 449 So.2d. 372, 372 (Fla. 4th DCA 1984). If an essential term has not been agreed upon by the parties, the contract cannot be enforced. *Estate of Hernandez* at 1124.

In this case, Plaintiffs allege that the parties had an oral contract where Defendant could use Plaintiffs' airplane and pay for the costs for operating the plane, including a $1000 per hour fee plus fuel charges and pilot expenses. Second Am. Compl. at ¶ 36. Defendant argues that although there was an oral contract that Defendant would pay the actual costs incurred in using the plane, fuel and flight crew for example, there was no oral agreement regarding an hourly fee for flying the plane. Moreover, even had the parties agreed that Defendant was supposed to pay an hourly rate for the plane, the parties never agreed to an actual price. Plaintiff relies on the Bunster's statements and a series of e-mails to show that there was an agreed upon price of $1000.

This Court finds that the parties never agreed to an hourly rate for using the airplanes and therefore an alleged oral contract is unenforceable. Mr. Bunster stated in his deposition that he and Defendant did not agree on a price until December 28, 2006, the date of the e-mail correspondence. Bunster Depo. P. 62-67. In the e-mails, Mr. Bunster and Defendant discuss an hourly rate for Defendant's use of Plaintiffs' airplane. Def. Undisputed Facts Exhib. A. On

8

December 27, 2006, Defendant states that although he believes that $800 per hour is a fair price, he will not argue with $1000, Bunster's alleged proposed price. *Id*. He then goes on to explain a number of additional expenses that he has incurred in connection with the flights and suggests that the parties settle their books by Defendant giving Plaintiff $45,000. *Id*. Bunster responded the next day stating that he wanted $1200 per hour but will settle on $1000 "in the spirit of showing you continued good will[.]" *Id*. Bunster then elaborates a number of additional expenses that Plaintiffs paid as a result of Defendant's use of the plane as a grounds for rejecting Defendant's $45,000 offer. There is no subsequent written communication regarding this issue.

Although the parties both seem to agree that Defendant should pay $1000 per hour for using the planes, there is actually no agreement. Defendant's offer was actually to pay $45,000, which Bunster rejected. In essence, Defendant stated that he would pay $1000 per hour but because of a number of other expenses that he incurred, he would "settle up" with Plaintiffs for $45,000. Plaintiffs rejected that offer because of the additional expenses that it had also incurred.

Additionally, other individuals involved in this lawsuit stated that there was no agreement regarding how much Defendant should pay as an hourly fee for using the planes. Schlesinger Decl. ¶ 7; Kerr Decl. ¶ 8; Rosario Depo. p. 19-21. Based on the above evidence, Plaintiffs have failed to show that there was an enforceable oral contract and therefore summary judgment is granted on this point.

### E.  Count IV – Civil Theft

Under Florida law, a cause of action for civil theft "derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section." *Ames v. Provident Life & Accident Ins.*

9

*Co.*, 942 F. Supp. 551, 560 (S.D. Fla. 1994), *aff'd*, 86 F.3d 1168 (11th Cir. 1996). To establish a claim for civil theft, Plaintiffs must show that Defendant knowingly obtained or used, or endeavored to obtain or to use, the property of another with intent to, either temporarily or permanently (a) deprive the other person of a right to the property or a benefit from the property; or (b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.  Fla. Stat. § 812.014(1).  Additionally, "it is necessary to show not only that defendant obtained or endeavored to obtain the plaintiff's property, but that he did so with felonious intent to commit theft." *Ames*, 942 F. Supp. at 560.  Plaintiff argues that Defendant used the planes and did not pay for them and therefore committed civil theft.  Second Amend. Compl. ¶¶ 41-44; Response at 6.  Based on the analysis under the conversion section, Plaintiffs are not able to make out this claim.  In finding that Defendant was authorized to use the airplanes, Plaintiff is precluded from proving a necessary element to civil theft, that Defendant had the felonious intent to commit theft.  In order to show the felonious intent, Defendant would have had to take the planes without first seeking authorization from Bunster.  Since Defendant always sought authorization, he did not have a felonious intent to steal Plaintiffs' aircraft.  Thus, Plaintiffs cannot meet their burden and summary judgment is granted.

    **F.**    **Count V - Unjust Enrichment**

Plaintiffs allege that on October 27, 2005, Defendant owed $67,558.73 to ATS and that Plaintiffs entered into an agreement with ATS, pursuant to which Plaintiffs paid ATS that amount in exchange for the transfer of ATS' entire right, title, interest, claim and causes of action against Defendant.  *See* Second Am. Compl. at ¶¶ 26-28.  In Count V, Plaintiffs allege that "Defendant Schlesinger has been unjustly benefitted by his failure to pay ATS Sixty-Seven Thousand Five

Hundred Fifty-Eight Dollars and Seventy-three cents ($67,558.73) due and owed for services rendered to the Defendant in connection with the use of the Learjet 60 and other ATS aircraft..." *Id.* at ¶ 47.  Plaintiffs further allege that "ATS has been damaged to the extent of unreimbursed costs and loss of profits" and that ATS has assigned its interest in Defendant's debt to TCC pursuant to a Settlement Agreement between the parties.  *Id.* at ¶¶ 48-49.

Under Florida law, the elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See, e.g., Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

Although Plaintiffs seek to recover Defendant's alleged debts to ATS, Defendant argues that the bills are incorrect and credit him with air time that he did not actually use.  Moreover, as stated above, there are additional costs for operating an airplane above fuel, landing and pilot fees.  Depreciation of value is just one example of how Defendant may have been unjustly enriched by having used Plaintiffs' aircrafts.  Thus, material issues of fact remain in dispute and thus summary judgment is not warranted.

### III.   Conclusion

The Court has considered the motion and the pertinent portions of the record, and based on the foregoing reasons, it is hereby,

ORDERED AND ADJUDGED that: Defendant's Motion for Summary Judgment **[DE**

**61]** is GRANTED as to Counts II, III and IV.  The Motion **[DE 61]** is DENIED as to Counts I and V.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 12 day of December, 2006.

    /s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
Counsel of record